Liberty City Development Corporation v. Commissioner.
Liberty City Dev. Corp. v. Commissioner
Docket No. 18028.
United States Tax Court
1950 Tax Ct. Memo LEXIS 215; 9 T.C.M. (CCH) 347; T.C.M. (RIA) 50104; April 19, 1950
*215 Harry G. Taylor, Esq., Alfred I. DU Pont Bldg., Miami, Fla., for the petitioner. E. L. Potter, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in the income, declared value excess-profits and excess profits tax liability of petitioner for the calendar years 1942, 1943, 1944 and 1945, as follows: Declared Value
Exess-
Profits
Excess-Profits
Year
Income Tax
Tax
Tax
1942
$ 451.63
$11,712.06
1943
933.67
16,802.80
1944
1,116.58
15,209.37
1945
$306.94
517.76
14,591.58
Three issues are involved. Did respondent err in his determination: (1) That the salary petitioner paid Floyd W. Davis, its president, in 1942, 1943, 1944 and 1945 was excessive; (2) that the salary petitioner paid Iva S. Davis, its secretary, for the years 1944 and 1945 was excessive, and (3) in disallowing as deductions certain claimed business expenses for the years 1942, 1943, 1944 and 1945? Findings of Fact Petitioner was incorporated under the law of Florida, July 1, 1930, and has been engaged in the real estate business since that date, with its office *216 and place of business in Miami, Florida. Its chief operations have been the development and sale of lots in a housing subdivision for colored people. Its tax returns for the years involved were filed upon the cash receipts basis with the collector of internal revenue for the district of Florida. Since petitioner's organization, Floyd W. Davis (hereafter called Davis) has been its president, and Iva S. Davis, his wife, has been its secretary, and the personnel comprising its board of directors has not been materially changed. Upon organization petitioner issued 1,000 shares of preferred stock of the par value of $100 each, of which 300 shares were issued to Davis in exchange for certain realty which he conveyed to petitioner for an agreed value of $30,000. The remaining 700 shares of preferred was subscribed and paid for in cash, aggregating $70,000, by nine other individuals, all successful business men of Alton, Illinois, none of whom was related to Davis, from among whom, other than Davis, its board of directors was chosen. There was also issued 1,125 shares of common stock, having no par value, 775 shares of which were issued to Davis and 350 shares to the other owners of the *217 preferred. No change in the ownership of the common stock has occurred. Petitioner purchased 160 acres of land adjoining that which it had acquired from Davis for the purpose of subdividing all of same into lots and constructing and selling houses. Many difficulties arose shortly after petitioner was organized. A local bank failed and this, together with the economic depression then generally prevailing, prevented the sale of lots and retarded development of the property. In 1933 petitioner was two years behind with its taxes. Davis called a meeting of the stockholders and obtained from them on a pro rata basis $15,000 to pay taxes and other items necessary to the protection of the property, some of which went to reimburse Davis for expenditures made by him. Eventually petitioner was successful. As of December 31, 1945, it had assets other than cash of the value of $225,000, and from profits made had retired $85,000 of its preferred stock, and Davis was responsible for its success. He was experienced in the business of petitioner, having, prior to 1930, successfully engaged in the subdivision and sale of a large number of similar projects. Except for advisory assistance from *218 occasional meetings of its board of directors, all of the company's business was under the personal operation and management of Davis. He alone was responsible for the improvement, subdivision and selling of all property by petitioner, which ultimately consisted of some 2,000 lots, devoting his entire time and attention thereto. Among other services performed and caused to be performed by Davis for petitioner were these: planned the entire project and directed its development, including platting, surveying, laying out of streets, etc.; built about 75 houses, organized a sales force for the purpose of selling lots and houses, collected rents and received payments on sales. He spent considerable time before 1940 in procuring zoning regulations which would permit petitioner to sell its property to negroes. After considerable time and effort, he secured a slum clearance project which was financed by the Government and located upon a part of petitioner's property; the effect of which was to enhance the value and promote sales of remaining property owned by petitioner. Davis maintained an office for the receipt of payments on contracts, with a colored girl in charge. One colored man *219 was regularly employed, and others from time to time to sell lots. The lots usually were sold for $10 down and $6 or $8 per month, with interest payable upon the unpaid balance. The average price of a vacant lot was $400. When houses were built upon the lots they sold for from $1,000 to $1,250 each. In 1945 the value of lots and houses was materially increased. A majority of the lots was sold without improvements. Mrs. Iva S. Davis, as secretary of petitioner, was not active in its business. As a housewife she remained at home, occasionally going to a notary for the purpose of notarizing deeds of petitioner, which she was required to sign. The evidence fails to show the number of times, or the amount of time required for this, and it does not appear that compensation in any amount was ever allowed her by the board of directors. Prior to 1944, petitioner paid her nothing, but paid her $1,325 in 1944 and $1,300 in 1945 for services. Statistics taken from the books and records of petitioner show the following: Collection
for Year
Commission
Net Profit
Overdraft
to Date
Received
Contracts
from
Year
F. W. Davis
of Report
by Davis
in Force
Real Estate
1930
$ 2,568.88
$ 383.70
1931
4,361.26
1,320.05
1932
2,805.81
1,037.05
1933
1,338.66
334.65
1934
4,389.14
731.29
1935
$ 3,070.92
7,658.19
4,578.13
1936
8,660.24
14,960.66
7,052.67
$ 74,461.31
$ 180.71
1937
13,286.61
21,215.63
7,697.20
Lost (24.37)
1938
12,928.20
29,982.82
9,859.23
146,988.68
10,682.52
1939
13,649.33
52,932.41
19,725.35
261,491.28
21,544.16
TOTAL
142,213.46
52,719.12
1940
None
85,073.30
21,424.77
326,149.24
45,463.37
1941
None
84,917.11
11,089.19
294,922.30
55,244.53
TOTAL
169,990.41
32,513.96
1942
None
$ 78,016.61
$ 4,225.35
$239,347.57
$55,038.57
1943
None
83,349.01
816.75
156,857.14
63,765.07
1944
None
80,686.05
None
64,785.89
1945
None
85,061.87
14,910.25
164,181.12
59,523.80
TOTAL
327,113.54
19,952.35
GRAND TOTAL
639,317.41
105,185.43
*220 Net Cost
Dividends *
Annual Sales
Number of
Property
Paid on
Preferred
and
Individual
Sold or
Preferred
Stock
Re-Sales After
Collections
Year
Collected
Stock
Retired
Cancellations
Handled
1930
1931
1932
1933
1934
1935
1936
$ 7,354.71
$ 68,725.00
1937
9,535.78
79,940.00
1938
10,043.23
99,200.00
1939
11,662.91
199,975.00
1940
18,185.16
179,035.00
8,776
1941
18,583.39
102,695.00
7,628
1942
18,752.69
$ 35,000.00
None
12,950.00
6,288
1943
18,767.19
17,021.67
$10,000
1,500.00
5,650
1944
15,900.16
5,216.67
25,000
None
4,100
1945
10,627.82
1,443.75
50,000
131,750.00
2,900
Upon its organization, petitioner, through its board of directors, contracted to pay Davis for his services in acting as sales agent "12 1/2 per cent of the purchase price of each lot sold by him," but it was further agreed that "Davis shall defray all selling expenses except the cost of platting, making improvements and abstract fees and charges." From 1930 to 1939, inclusive, Davis received no compensation for administrative *221 services, other than sales commissions, but it was orally agreed that when the company started making money, he would be paid a liberal salary for his services. In conformity with such agreement, on September 11, 1940, the minutes of the board of directors showed that on that date, after a recital of the varied and valuable services theretofore and then being rendered petitioner by Davis, for which he was not then being and had not in the past been compensated, the minutes recited that: "After considerable discussion, upon motion duly seconded, and carried, the following resolution was unanimously adopted: "WHEREAS, F. W. Davis has rendered valuable services to the Company for which he has not been compensated, and will continue so to do during the remainder of 1940, and "WHEREAS, he has a just, legal and equitable claim against the Company for such services, therefore be it resolved that such claim be recognized and that he be compensated therefor at the rate of $2,100.00 monthly from January 1st, 1940 until such time as this action shall have been rescinded by this Board, and * * *
"Be it further resolved that the sales Agreement now existing between the Company and *222 Mr. Davis, whereby he is to receive the first 12 1/2% of the selling price of the Company's property, be continued, the Company paying up to $3,500.00 of selling and collection expenses." These minutes appear to have been signed and approved by the president and secretary, four directors and seven stockholders of petitioner. During 1940 to 1945, inclusive, petitioner paid Davis the compensation authorized in above resolution. Petitioner deducted in each of the years 1942 to 1945, inclusive, $25,200, representing salary paid Davis for his services. Respondent, in his letter of deficiency, determined that such compensation was excessive to the extent of $12,500 in each year, and that reasonable compensation therefor in each of said years was $12,700. The compensation petitioner paid Davis for personal services in each of said years was reasonable in amount. Petitioner deducted for 1944, $1,325, and for 1945, $1,300, representing salary paid to Iva S. Davis. Respondent determined that same was excessive to the extent of $1,025 for 1944 and $1,000 for 1945, and that a reasonable salary for the services she performed was $300 for each year. The percentage ordinarily paid real *223 estate operators in Florida for services similar to that performed by Davis ranged from 25 to 40 per cent of sales where the total compensation was on a percentage basis. From 1930 to 1939, inclusive, Davis paid all expenses of sales and collections, including office rent, telephone rent, salaries of all employees and all costs of running and operating an automobile, as well as that of other salesmen's automobiles. The sums paid by Davis for such expenses during said period greatly exceeded the 12 1/2 per cent collected by him as sales commissions. Respondent in his letter of deficiency disallowed expenses claimed by petitioner in the amounts of $965.03, $6,645.45, $3,006.30 and $3,485.23 for the years 1942, 1943, 1944, and 1945, respectively, on the ground that items aggregating these amounts in each of said years were payable by Davis as selling agent under his contract to pay all "selling and collection expenses" and hence were not deductible by petitioner. Included in these items disallowed by respondent were the following: 1942
1943
1944
1945
Depreciation on autos
$549.94
$ 621.23
$ 871.24
$1,121.24
One-half of audit and legal expenses
950.00
325.00
500.00
$549.94
$1,571.23
$1,196.24
$1,621.24
*224 The automobiles in question were the property, not of Davis, but of petitioner; and the audit and legal expenses were incurred in the management, operation and general conduct of petitioner's business. Neither of the two items above referred to was incurred as, nor did either constitute, any part of the "selling and collection expenses." All other items of expense disallowed by respondent were selling and collection expenses which, under Davis' contract of employment, were payable by and allocable to him, and were not deductible by petitioner. Opinion We deem it unnecessary to review in detail the evidence upon which we have reached the conclusion that the compensation paid Davis for his services by petitioner is reasonable in amount. Suffice it to say that we have considered all of the factors usually employed in passing upon this question, and we think the evidence as a whole sustains petitioner's contention upon this issue. While Davis contributed less than one-third of the capital of petitioner, it was due to his foresight and planning that the corporation was created, and his experience, skill, time and industry devoted thereto made possible its success. As president and *225 general manager he was its sole executive officer, and both planned and executed its policies and program. He did all of the work except that done by a few minor employees, all of whom were compensated by Davis out of the sales commission paid him by petitioner. We hold that the salary and compensation paid Davis in the taxable years here involved were reasonable. The above holding is further supported by the fact that the sales commission paid Davis at all times was less than one-half the amount ordinarily paid by others for similar services, and that he received no salary whatever for the first ten years of petitioner's existence, with the understanding that he would be liberally compensated when petitioner was able to pay a salary. On the second issue relating to the salary of Mrs. Davis as secretary, we sustain the Commissioner's determination of $300 per annum in 1944 and 1945 as being reasonable in amount, on the ground that petitioner has failed to meet its burden of proof that a sum in excess of that amount would have been reasonable. On the third issue we sustain respondent's determination as to expenses disallowed to the petitioner, except as to the two items of "depreciation *226 on autos" and "one-half of audit and legal expenses." These two items under the evidence we have found not to be selling and collection expenses, and hence under the contract were not allocable to Davis, but were deductible by petitioner. Petitioner, as owner of the automobiles, was entitled to depreciation thereon. We have not disturbed respondent's determination in denying to petitioner deduction for expense of operation of the automobiles, since under Davis' contract he was to pay this expense and hence it was not deductible by petitioner, but depreciation in value is a different matter and is allowable to the owner, not the user, of an automobile. After deducting the aggregate of these two items of expense for each of the taxable years involved from the amounts determined by respondent, we find and hold that petitioner claimed expenses which are excessive in amount and are not deductible, as follows: For 1942, $415.09, for 1943, $5,074.22, for 1944, $1,810.06 and for 1945, $1,863.99. Decision will be entered under Rule 50. Footnotes
*. Dividends not payable on common until all preferred was retired.↩